789 So.2d 1271 (2001)
In re JUSTICE OF The PEACE Lawrence LANDRY.
No. 2001-O-0657.
Supreme Court of Louisiana.
June 29, 2001.
*1272 Charles J. Murray, John V. Robichaux, Jr., Counsel for Applicant.
Nancy E. Rix, Commission Legal Counsel, New Orleans, Hugh M. Collins, PhD, Chief Executive Officer, Steve R. Scheckman, Special Counsel.
WILLIAMS, Justice Pro Tempore.[*]
This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (the Commission) that Lawrence A. Landry, Justice of the Peace for Ward E., St. Bernard Parish, be suspended without pay for a period of six months and ordered to pay the cost of the prosecution of these proceedings. After conducting an investigatory hearing, the Commission filed a formal charge against Justice of the Peace Landry, finding that he violated Article V, § 25(C) of the 1974 Louisiana Constitution and Canons 1, 2(A), and 3(A)(1) of the Code of Judicial Conduct by rendering a default judgment *1273 against a defendant in a small claims matter without having served the defendant with notice of the suit and without requiring relevant and competent evidence of the plaintiff to make a prima facie case.
After a thorough review of the facts and law in this matter, we find clear and convincing evidence sufficient to support the charge filed against Justice of the Peace Landry. We agree with the Commission's recommendation that Justice of the Peace Landry be suspended without pay for a period of six months and ordered to pay the cost of these proceedings. In addition, we impose a sanction of two years probation.

FACTS AND PROCEDURAL HISTORY
Justice of the Peace Lawrence Landry was first elected as a justice of the peace in March of 1984 and has served continuously since that time. This disciplinary action was initiated against Justice of the Peace Landry upon receipt by the Commission of a complaint filed by Dorothy Waldrup, Esq., alleging that Justice of the Peace Landry rendered a default judgment on September 16, 1999 in the amount of $1,000[2] against Ms. Waldrup's client, Robert L. Russell, without having served Mr. Russell with notice of the suit.[3] The complaint also alleged that on or about October 6, 1999, Ms. Waldrup went to the office of Justice of the Peace Landry concerning the matter at which time Justice of the Peace Landry remarked to Ms. Waldrup, "now he [Mr. Russell] is paying attention," or something to that effect. During this meeting, Justice of the Peace Landry promised to vacate the judgment and produce a copy of the case record. When he failed to do so after several weeks, Ms. Waldrup filed the judicial complaint to the Commission. Eventually, Justice of the Peace Landry provided her with the record. He failed to vacate the judgment until November 11, 1999.[4]
The Office of Special Counsel notified Justice of the Peace Landry of the complaint by letter dated November 8, 1999. Justice of the Peace Landry responded by letter in which he characterized his actions as "unintentional mistakes." The Commission authorized an investigation and sent Justice of the Peace Landry notice of the investigation on February 23, 2000. On May 23, 2000, the Commission filed Charge 0125 against Justice of the Peace Landry for his handling of the case, Ahmed v. Robert L. Russell, d/b/a Russell's (No. SC 10890) (the Ahmed case).
Justice of the Peace Landry and the Office of Special Counsel filed a Statement of Stipulated Uncontested Material Facts with the Commission. These Stipulated facts were adopted by the Commission in its Findings of Fact and Conclusions of Law. We now adopt these stipulated facts in our findings.
*1274 Lawrence Landry acted in a judicial capacity as the Justice of the Peace in a small claims matter on September 16, 1999, in which he rendered a judgment in favor of the plaintiff, Mr. Ahmed and against the defendant, Mr. Russell in the amount of $1,000[5] plus court costs and legal interest.
On August 11, 1999, Justice of the Peace Landry issued Citation No. SC10890 in the Ahmed case pursuant to a "Statement" filed by Mr. Ahmed, on the same day. The statement of claim filed by Mr. Ahmed merely stated: "poor work done." The case record contained no other documented evidence concerning the claim.
Justice of the Peace Landry failed to instruct and/or otherwise direct the constable to effect service of process upon the defendant, Mr. Russell, in accordance with the law. Rather, Justice of the Peace Landry mailed a copy of the citation along with the Statement of the Claim to Mr. Russell at an address in New Orleans, outside of St. Bernard Parish, via regular and certified mail. The certified letter was returned marked "unclaimed."
Justice of the Peace Landry failed to conduct a formal hearing in the matter prior to rendering the Judgment on September 16, 1999. In a supplemental letter of response to the Office of Special Counsel, Justice of the Peace Landry stated: The plaintiff proved his case at the time he filed suit. He explained to me his facts of the case."
In addition to the stipulated facts, the Commission found that Justice of the Peace Landry had six prior complaints (five matters) before the Commission since 1988 relative to his conduct as a Justice of the Peace. These files were closed based on his assurances that he would comply with the applicable rules or laws.[6]

*1275 PROCEEDINGS BEFORE THE COMMISSION
At the hearing, Justice of the Peace Landry testified regarding the matters in dispute. He defended his actions in the handling of the Ahmed case, in part, by emphasizing that Louisiana Justices of the peace are not required to be lawyers, and that he is not a college graduate or a lawyer.[7] He emphasized that his only training is at an annual seminar conducted by the Attorney General's Office, which includes one and one half day of instruction.
Justice of the Peace Landry testified he was unaware of how critical it was for Mr. Russell to receive formal notice in accordance with the procedural rules, and that he just presumed notice via the mail constituted legal service of process. He claimed he was confused as to how to make service of process in the case since Mr. Russell's address was located outside of St. Bernard Parish. While he maintained he ordinarily sought guidance from a district judge in his area whenever he has a procedural question, Justice of the Peace Landry conceded he did not seek assistance in the Ahmed case. He further testified he often used paperback versions of West's Louisiana Civil and Criminal Codes, and the Code of Civil Procedure, with his most recent versions being the 1994 editions. However, he admitted he failed to consult the Code of Civil Procedure in the Ahmed case. When the Commission informed Justice of the Peace Landry that his own citation form stated service had to be made in accordance with the Louisiana Code of Civil Procedure, he stated he thought that meant service was made "as long as he [Mr. Russell] got a copy of it."
Next, Justice of the Peace Landry testified he did not always conduct a "formal" hearing before rendering a default judgment since he felt it was unnecessary. He testified the plaintiff ordinarily proves the case when he/she is sitting with him preparing the statement of claim and tells his/her story in support of the suit filing. As to the Ahmed case, Justice of the Peace Landry conceded he did not swear in any witness nor require any documentary or testimonial proof. Rather, he admitted the entire default "proceeding" was conducted over the telephone. He asserted that Mr. Ahmed showed him invoices for work performed by a plumber after Mr. Russell was hired and paid to unclog a sewer, but Justice of the Peace Landry did not retain the invoices or copies of them, and such invoices were not in his file or introduced into evidence because there was no hearing. When asked whether he understood the difference between the allegations in a petition and legal proof, Justice of the Peace Landry replied "Maybe not, no."

THE JUDICIARY COMMISSION'S FINDINGS AND CONCLUSIONS
In recommending sanctions against Justice of the Peace Landry, the Commission found that his conduct, in rendering a default judgment against Mr. Russell without *1276 ensuring proper service of process and convening a hearing in the matter reflected his attitude that it was not necessary to follow procedural law and in certain respects constituted legal error. The Commission found that considering that he served as a justice of the peace for over 15 years when the Ahmed case was filed, it was inexcusable that he failed to acquire the knowledge necessary to perform basic duties, including affording a defendant legal notice and a hearing before rendering a default judgment. The Commission concluded that such failure to obtain this basic knowledge constituted a violation of Canon 2A of the Code of Judicial Conduct.[8]
The Commission further concluded that by his intentional disregard of lawful procedure, Justice of the Peace Landry failed to personally observe high standards of conduct to preserve the integrity and independence of the judiciary, in violation of Canon 1, and failed to "be faithful to the law and maintain professional competence in it," in violation of Canon 3(a)(1) of the Code of Judicial Conduct.
The Commission did not find that Justice of the Peace Landry violated Canon 3(A)(3). In this finding, the Commission relied upon Ms. Waldrup's testimony that Justice of the peace Landry was not impatient or discourteous to her and Mr. Russell's testimony that he never had any contact with Justice of the Peace Landry.
The Commission noted (1) deposition testimony from Mr. Russell to the effect that he never personally spoke with Justice of the Peace Landry about the Ahmed claims and did not know he had a certified letter waiting at the post office from Justice of the Peace Landry, purportedly containing the citation, and (2) Justice of the Peace Landry's contrary testimony that he spoke with Mr. Russell after Mr. Russell received the citation by ordinary mail. The Commission concluded that it was not necessary to determine which testimony was more credible because the attempted service by mail did not constitute legal service. It concluded that whether or not Justice of the Peace Landry and Mr. Russell spoke was not relevant to the issue of whether Mr. Russell was afforded legal notice-under either analysis he was not.
The Commission recognized that justices of the peace are not lawyers and have minimal training, which can be a factor in mitigation in some cases where their judicial conduct is at issue. However, the Commission did not recognize such a mitigating factor in this case because (1) Justice of the Peace Landry admitted that he had only consulted the Attorney General's Office one time for guidance when he had a question about procedural matters; (2) he has had six prior complaints (five matters) about his ethical conduct; and (3) Justice of the Peace Landry has had in excess of 15 years to learn how to do his job, but he had not learned to insure a defendant's fundamental rights to legal notice and a hearing prior to rendition of judgment.
The Commission further recognized that legal error may constitute judicial misconduct if it is either egregious legal error, legal error motivated by bad faith, or a pattern of repeated legal error.[9] *1277 Legal error is egregious when fundamental rights are denied, and may be the subject of discipline when the conduct reflects bias, malice, or intentional disregard of the law.[10]
With regard to the prior complaints received by the Commission and closed under varying circumstances, the Commission concluded that it is expressly authorized by La. Sup.Ct. Rule XXIII, § 3(d) to refer to the prior complaints received by the Commission to establish a pattern of disregard for performing judicial duties according to required procedures. In light of the Commission's finding of the denial of a fundamental right, the intentional disregard of law, and a pattern of repeated legal error on the part of Justice of the Peace Landry, the Commission concluded that his conduct constituted judicial misconduct.
The Commission concluded Justice of the Peace Landry should be held accountable for the detrimental consequences to Mr. Russell resulting from the rendition of the judgment, namely, Mr. Russell had to obtain an attorney and "undergo the potentially expensive proposition" for the purpose of trying to annul the erroneously rendered judgment. The potential detriment existed in the event Mr. Ahmed had filed the judgment in the mortgage records of one or more parishes where Mr. Russell owned property creating a cloud on his title in the form of a judgment lien.
The Commission concluded that the record overwhelmingly showed that Justice of the Peace Landry's actions as set forth in the Formal Charge 0125 were in violation of the Code of Judicial Conduct and the Louisiana Constitution.

DISCUSSION
For the reasons stated herein, we agree with the findings of the Commission and impose a sanction of six months suspension without pay, two years probation, and all costs of the proceedings against Justice of the Peace Landry.
The United States Constitution and Louisiana Constitution guarantee an individual the right to due process of law. La. Const. Art. 1 § 2. The right to due process is one of the most basic and fundamental rights bestowed on our citizens by the Constitution. Procedural due process requires an opportunity to be heard, in addition to notice of the pendency of an action against an individual. Under La. C.C.P. art 1201, a judgment rendered against a defendant who has not been validly cited and served with the petition is absolutely null, even if there is actual notice of the suit. Without such citation and service of process, the court does not have jurisdiction over the person of the defendant. Poret v. Billy Ray Bedsole Timber Contractor, Inc., 31,531 (La.App. 2 Cir. 1/22/99), 729 So.2d 632 citing U.S. Fidelity and Guaranty Co. v. Hurley, 96-1421 (La. App. 4 Cir. 8/6/97), 698 So.2d 482. Further, La. C.C.P. art.2002(2) provides that among those judgments which may be annulled are those rendered "against a defendant who has not been served with process as required by law and who has *1278 not entered a general appearance, or against whom a valid judgment by default has not been taken."
Justice of the Peace Landry's actions in this matter strike at the very core of a defendant's fundamental right to due process; a defendant's right to be heard. Mr. Russell's procedural right to due process was violated when Justice of the Peace Landry failed to properly serve him with notice of the suit filed against him.[11] Justice of the Peace Landry was required by law to properly serve Mr. Russell with notice of the suit filed against him by directing the sheriff of St. Bernard Parish or the Sheriff of Orleans Parish to serve him. Service by the sheriff includes procedures which ensures service upon a defendant. The Sheriff must make an endorsement on a copy of the citation verifying sufficient data to show service in compliance with law.[12] The law is well stated that the sheriff's return of service is entitled to great weight and is presumed to be correct. Samrow v. Samrow, 428 So.2d 547 (La.App. 4 Cir.1983); Smith v. Moore, 539 So.2d 888 (La.App. 4 Cir.1989).
Instead of using the proper method for service pursuant to the Louisiana Code of Civil Procedure to ensure notice to Mr. Russell, Justice of the Peace Landry sent notice of the suit to Mr. Russell via regular and certified mail. This did not constitute legal service. We find that Justice of the Peace Landry's failure to do more to effect valid service constituted egregious legal error and ethical misconduct. His explanation that he made a "common sense" based decision as to how to effect service is unacceptable. Our judicial system operates on "rules of law" of which judges and lawyers must abide.
Justice of the Peace Landry, through counsel, argues that a non-lawyer justice of the peace should not be held to the same standard of knowledge as a highly trained judge who is required to not only be a lawyer but also to have practiced for at least 5 years before being eligible for election. We find, as did the Commission, that Justice of the Peace Landry's lack of education is insufficient justification for his actions. The Code of Judicial Conduct is binding on all judges, including justices of the peace, and violations of Canons in the code can serve as a basis for disciplinary action. La. Const. Art. 5 § 25(C); In re Justice of the Peace Guy McInnis, XXXX-XXXX (La.10/19/00), 769 So.2d 1186. After serving as justice of the peace for over 15 years, Justice of the Peace Landry should have known how to perfect proper service of process upon a defendant, including a defendant who resides outside of St. Bernard Parish. As a judicial officer, he is required to know, *1279 understand, and respect the fact that our system of government is one of rules. He is sworn to apply and abide by these rules.
Mr. Russell's right to due process was further violated when Justice of the Peace Landry rendered a default judgment against him, not only with insufficient service of process, but also without requiring the plaintiff to establish a prima facie case. La. C.C.P. art. 4921.[13] He did not require any documentary or testimonial proof before he entered the default judgment. The entire proceeding was conducted over the telephone. The law is clear that a judgment of default must be rendered or confirmed by proof sufficient to establish a prima facie case. La. C.C.P. art. 1702. A prima facie case is established only when the evidence proves the essential allegations of the petition to the same extent required as if those allegations had been specifically denied. Smith v. Moore, 539 So.2d 888 (La.App. 4 Cir. 1989), citing Iberoamericano Advertising v. Schweikert, 464 So.2d 899 (La.App. 4 Cir.1985). In this case, Mr. Ahmed presented no proof whatsoever of his claim against Mr. Russell sufficient to warrant a judgment of default. Although Justice of the Peace Landry testified that Mr. Ahmed, at the time of filing the complaint, explained the situation to him and showed him receipts of payment for work to be performed by Mr. Russell, there is no documentary evidence in the record to support Mr. Ahmed's claim. Justice of the Peace Landry essentially accepted Mr. Ahmed's word that the allegation in his complaint of "poor work done" was true and accepted it as sufficient legal proof.
We conclude that the allegations in the formal charge against Justice of the Peace Landry for rendering a default judgment without valid service of process upon Mr. Russell and without a hearing in the matter, considered with his prior disciplinary complaints, as shown by clear and convincing evidence in the record, constituted a violation of the Code of Judicial Conduct and the Louisiana Constitution.
We turn next to the appropriate sanctions to be imposed. In recommending discipline, the Commission looked to the list of factors set forth by this Court in In re Chaisson, 549 So.2d 259 (La.1989). In Chaisson, we stated that in determining the appropriate sanction, we consider the following non-exclusive factors:
(a) whether the misconduct is an isolated instance or evidences a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about the judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In this case, we adopt the findings of the Commission of the Chaisson factors as *1280 applied to Justice of the Peace Landry. Justice of the Peace Landry's misconduct, when considered with the six prior complaints, evidences a pattern of inappropriate and unethical conduct. The denial of procedural due process to Mr. Russell was egregious. His actions occurred in connection with his judicial duties. Justice of the Peace Landry has admitted that the acts alleged have occurred, and at the hearing he assured the Commission he would not make the same mistakes again. He testified that he will obtain current codes of procedure, and his attorney has agreed to assist him when procedural questions arise in the future. However, based on his history, the Commission was not persuaded and, nor are we, Justice of the Peace Landry will abide by the rules in the future.
Justice of the Peace Landry assumed the bench in March of 1984, and was a seasoned judicial officer when the facts giving rise to the formal charge occurred. There have been numerous prior complaints to the Commission concerning the judicial practices of Justice of the Peace Landry. His conduct has seriously undermined the judicial process.
In considering the Chaisson factors to the facts in this case, we find Justice of the Peace Landry's actions as stated in the formal charge against him, as well as his prior unethical conduct as found in the previous complaints, foster a negative effect on the integrity and respect for the judiciary. Given the seriousness of the misconduct of Justice of the Peace Landry, we find that an appropriate disciplinary action is to order that Justice of the Peace Landry be suspended without pay for six months, placed on a two year probationary period, and assessed all costs of these proceedings.

DECREE
Upon review of the findings and recommendation of the Judiciary Commission, and considering the record filed herein, it is hereby ordered that Justice of the Peace Lawrence Landry, Ward E, Parish of St. Bernard, be suspended for six months without pay, followed by a two year period of probation, for rendering a default judgment against a defendant without proper service of process and without convening a hearing, in violation of Canons 1, 2(A) and 3(A)(1). Justice of the Peace Lawrence Landry is cast with costs of this proceeding, and shall pay to the Judiciary Commission the sum of $533.42 as reimbursement for expenses incurred by the Commission during its investigation and prosecution of this case. Supreme Court Rule XXIII, § 22.
NOTES
[*] Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson; Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[2] The September 16 judgment stated in written terms that it was in the amount of $1800, but numerically it was described as being in the amount of $1000. Ms. Waldrup attached the judgment to her complaint, and described the amount of the judgment in her complaint letter as $1000. However, the parties stipulated that the amount of the judgment was $1800.
[3] The plaintiff, Mr. Ahmed filed a complaint with Justice of the Peace Landry against the defendant, Mr. Russell, alleging "poor work done" in connection with plumbing services performed by Mr. Russell on Mr. Ahmed's property.
[4] The Commission noted that Justice of the Peace Landry's "vacating" of the judgment may not have been supported by law, in that nullity actions must be brought by a person against whom the judgment may be enforced, citing La. C.C.P. art. 2002. Moreover, the Commission recognized nullity actions must be brought in ordinary proceedings, with all parties to a suit receiving notice thereof. Nonetheless, it pointed out these issues were not raised in the instant proceeding.
[5] See note 1, supra (regarding the discrepancy in the amount of the judgment).
[6] There were six previous complaints filed against Justice of the Peace Landry, with two arising out of the same matter:

1. On March 23, 1988, Justice of the Peace Landry was notified by the Commission that it was closing its file concerning his performance of weddings outside his jurisdictions (in one instance he was pictured in the Times Picayune performing a wedding wearing a gorilla suit) and his advertising which sought wedding ceremony business throughout the metropolitan area on a 24 hour basis. The Commission agreed to close its file after consideration of Justice of the Peace Landry's written promise to cease and desist the misconduct.
2. On November 9, 1988, Justice of the Peace Landry was notified of the Commission's decision to close two pending complaints stemming from his failure to render written judgments. However, he was admonished to observe Canon 3A(5) of the Code of Judicial Conduct, which directed that a judge "dispose promptly of business in his court" and warned that the Commission was seriously concerned that three complaints had been filed against him within less than one year. It further cautioned Justice of the Peace Landry that "[s]hould another valid complaint be filed ... the Commission would be forced to consider the initiation of proceedings against [him]."
3. On May 7, 1990, the Commission notified Justice of the Peace Landry of another complaint concerning his practice of weddings outside of his jurisdiction without having obtained authority from this court and his improper advertising that he would perform weddings in the metropolitan area. In its letter, the Commission referred Justice of the Peace Landry to its prior admonition to him concerning his failure to follow the law in this regard. Again, the Commission determined that it would have no choice but to initiate formal disciplinary proceedings if another complaint was filed against him.
4. The fifth complaint involved allegations that Justice of the Peace Landry was presiding over cases which involved litigants who were also clients of his insurance company and, therefore with whom he also had financial relationships in violation of the Code of Judicial Conduct. Following a formal hearing, Justice of the Peace Landry agreed to apologize to the complainant, confer with the other justices of the peace in St. Bernard parish to try to educate him about the proper handling of small claims procedures and develop a form or pamphlet to inform litigants in small claims court of the proper court procedure.
5. On September 4, 1997, the Commission notified Justice of the Peace Landry of its decision to close an investigative file stemming from a complaint filed by a small claims plaintiff which alleged Justice of the Peace Landry refused to pursue a case because of his relationship with the defendant.
[7] Upon completing two years of college, Justice of the Peace Landry opened his own insurance agency in St. Bernard Parish. His judicial office is set up in his insurance agency's place of business.
[8] Canon 2A of the Code states: "A judge shall respect and comply with the law an shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[9] In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172 (public censure imposed for judicial misconduct based on pattern of egregious legal error where judge denied criminal nonsupport defendant their procedural due process rights to prior notice and opportunity to prepare for trial.); In re Aucoin, 99-3084 (La.8/31/00); 767 So.2d 30 (judge committed egregious legal error when he failed to comply with the law and disregarded the right of a criminal defendant to present a criminal defense, as well as disregarded the basic tenants of due process.)
[10] In Quirk, this court held:

A single instance of serious, egregious legal error, particularly one involving the denial to individuals of their basic fundamental rights, may amount to judicial misconduct ... Intentionally refusing to follow the law constitutes a legal error made in bad faith and may also be ground for a finding of judicial misconduct. Finally, a pattern of repeated legal error (although not necessarily the same error) over a period of time can constitute judicial misconduct, regardless of whether the errors were made in bad faith or were egregious in nature. 705 So.2d at 178.
[11] La. C.C.P. art 1201 provides, in pertinent part:

A. Citation and service thereof are essential in all civil actions except summary and executory proceedings and divorce actions under Civil Code Article 102. Without them all proceedings are absolutely null.
La. C.C.P. art 1291 provides:
Except as otherwise provided by law, service shall be made by the sheriff of the parish where service is to be made or of the parish where the action is pending.
[12] La. C.C.P. art 1292 provides:

The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law. He shall sign and return the copy promptly after the service to the clerk of court who issued it. The return, when received by the clerk, shall form part of the record and shall be considered prima facie correct. The court, at any time and upon such terms as are just, may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.
[13] La. C.C.P. art. 4921 reads, in pertinent part:

A. If the defendant fails to answer timely, or if he fails to appear at the trial, and the plaintiff proves his case, a final judgment in favor of plaintiff may be rendered. No prior default is necessary.
B. The plaintiff may obtain a final judgment only by producing relevant and competent evidence which establishes a prima facie case ...