906 So.2d 420 (2005)
In re JUSTICE OF the PEACE Wade COOK, Justice of the Peace Court District 1, Parish of Sabine, State of Louisiana.
No. 2005-O-0783.
Supreme Court of Louisiana.
June 29, 2005.
*421 Office of Special Counsel, Steven Robert Scheckman, Mary Frances Whitney, for Judiciary Commission.
Wade Cook, pro se.
Nancy E. Rix, New Orleans, Commission Counsel.

ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA.
CALOGERO, Chief Justice.
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that Wade Cook, Justice of the Peace for Justice of the Peace Court District 1, Parish of Sabine, be removed from judicial office and ordered to reimburse the Commission the costs incurred in the investigation and prosecution of this judge discipline case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and conclusions of law, and determined that respondent violated Article V, § 25(C) of the 1974 Louisiana Constitution and Canons 1 and 2(A) of the Code of Judicial Conduct by failing to attend mandatory justice of the peace training provided by the Louisiana Attorney General from 1995 to 2003, as required by La.Rev.Stat. 49:251.1 and La. Rev.Stat. 13:2589, and, thereafter, by failing to attend the special justice of the peace training course held on August 26-27, 2004.[1]
After reviewing the record, we find the charge against Justice of the Peace Cook *422 is supported by clear and convincing evidence. Furthermore, there was potentially serious harm to the public as a result of Justice of the Peace Cook's complete failure to attend justice of the peace training courses, and thereby maintain a minimum of competency and currentness in the law and his legal duties. In light of the minimal prospect of Justice of the Peace Cook revising his conduct and commencing his compliance with clear statutory provisions by attending justice of the peace training courses in the future, the risk of further harm to the judiciary and the general public should he remain in office is such that we agree with the Judiciary Commission that Justice of the Peace Cook's misconduct warrants removal from judicial office.

FORMAL CHARGE AND JUDICIARY COMMISSION FINDINGS
In Formal Charge No. 0229, as supplemented and amended, the Judiciary Commission alleges that Justice of the Peace Cook assumed office in 1994 and, since then, has never attended mandatory justice of the peace training required by La. Rev.Stat. 49:251.1 and La.Rev.Stat. 13:2589. The Commission next alleges that Justice of the Peace Cook failed to respond to a letter of inquiry from the Office of Special Counsel dated June 26, 2003. The Commission also alleges that Justice of the Peace Cook was informed by the Office of the Attorney General by letter dated April 13, 2004, that its records showed that he had not attended the required training course within the prior two years. The Commission next alleges that, though both the Commission, by letter dated May 12, 2004, and the Attorney General, by letter dated May 24, 2004, informed Justice of the Peace Cook of a special training course for those justices of the peace who had not complied with the mandatory training requirements, Justice of the Peace Cook failed to attend the special training course conducted August 26-27, *423 2004. Finally, the Commission charged that Justice of the Peace Cook violated Canons 1, 2A, 3A(1), and 3A(2)[2] of the Code of Judicial Conduct; that he engaged in willful misconduct relating to his official duty in violation of La. Const. art. V, § 25(C).
Though he was served with notice of the formal charge and the hearing before the Judiciary Commission, as well as a subpoena commanding his appearance, Justice of the Peace Cook failed to appear at the hearing. After receiving the testimony of Ms. Elizabeth "Libby" Noto, the training and education coordinator for the Office of the Attorney General, and various exhibits showing that Justice of the Peace Cook had been notified of his violation of the mandatory training requirement, as well as the opportunity for a "make-up" session, the Commission found the factual allegations in the charge had been established by clear and convincing evidence. The Commission specifically found that Justice of the Peace Cook did not attend any training courses pursuant to La.Rev. Stat. 49:251.1 and La.Rev.Stat. 13:2589 during the period of time in which the Attorney General's Office was keeping attendance reports and that respondent did not attend the special course conducted in August 2004. The Commission concluded that Justice of the Peace Cook's failure to attend these training sessions violated Canons 1 and 2A of the Code of Judicial Conduct and La. Const. art. V, § 25(C).[3] As for a sanction for this misconduct, the Commission recommended that Justice of the Peace Cook be removed from judicial office and be ordered to pay $129.50 in costs.

DISCUSSION
Article V, § 25(C) of the 1974 Louisiana Constitution provides the substantive grounds for disciplinary action against a judge:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct *424 while in office which would constitute a felony, or conviction of a felony.
The Code of Judicial Conduct adopted by this court in 1976 under its supervisory authority supplements the Constitution's substantive grounds for disciplinary action against a judge. See In re: Babineaux, 346 So.2d 676, 678 (La. 1977). The Code is binding on all judges, including justices of the peace. In re: Wilkes, 403 So.2d 35, 40 (La.1981). Violations of the Canons provided by this Code can serve as a basis for the disciplinary action provided for by Article V, § 25(C) of the Constitution. In re: McInnis, 00-1026, p. 1 n. 2 (La.10/17/00), 769 So.2d 1186, 1188 n. 2. Furthermore, a Justice of the Peace is governed by the same constitutions and laws that govern all courts and judges of this state, and is bound to apply the law as written by the legislature and construed by the various courts. Wilkes, 403 So.2d at 44. That he is a layman untrained in the law does not relieve him of his responsibility to follow the rule of law. Id.
Justice of the Peace Cook was elected in October 1994 to serve the remainder of the unexpired term of Justice of the Peace Steven L. Turner, Justice of the Peace Court District 1, Parish of Sabine. Justice of the Peace Cook was re-elected to judicial office in 1996 and again in 2002; his current term of office is due to expire on December 31, 2008.
Enacted in 1970, La.Rev.Stat. 49:251.1 provides for a Justice of the Peace Training Course to be offered regularly by the Louisiana Attorney General's Office. La. Acts 1970, No. 215, Sect. 1. However, attendance by justices of the peace was not made mandatory until 1995, when La.Rev. Stat. 49:251.1 was amended and re-enacted to require a justice of the peace to attend the first training session available after taking office and to attend at least one training session every other year. La. Acts.1995, No. 1237, Sect. 2; see also La. Acts.1995, No. 941, Sect. 1. As amended, the statute provides that state supplemental pay for a justice of the peace shall be withheld for failure to attend a training course and receive a certificate of completion from the Attorney General. La.Rev. Stat. 49:251.1(B). State supplemental pay is provided for in La.Rev.Stat. 13:2589 and La.Rev.Stat. 33:1702. See Note 1, supra. In 2001, the mandatory nature of that statute was repeated in the enactment of La.Rev.Stat. 13:2589(A)(2), which requires a justice of the peace to attend one of the training courses every other year pursuant to La.Rev.Stat. 49:251.1, and provides that the compensation provided for in La.Rev. Stat. 13:2589(A)(1) shall not be earned or received until the justice attends a course and obtains a certificate of completion from the Attorney General. La. Acts.2001, No. 689, Sect. 1.
This increased focus on the training of justices of the peace correlates with the increased jurisdiction granted justice of the peace courts in La.Code Civ. Pro. art. 4911. For example, in 1989 the jurisdictional amount was increased to $2,000.00 from $1,200.00. La. Acts.1989, No. 299, Sect. 1. In 1999, that jurisdictional amount was again increased to $3,000.00. La. Acts 1999, No. 151, Sect. 1. Additionally, this court has rejected defenses by justices of the peace who claimed to lack legal training and be ignorant of the law. See Wilkes, 403 So.2d at 44; In re: Landry, 01-0657 (La.6/29/01), 789 So.2d 1271. Combined with the fact that a justice of the peace possesses significant authority in both civil and criminal matters,[4] the training *425 of justices of the peace in the law of this state has become more important to the public as well as to this court. The case today, as well as the companion case of In re: Chaffin, 05-0782, 906 So.2d 428 (2005), also handed down today, serve to emphasize this court's concern that justices of the peace, who are not required to be attorneys admitted to the practice of law, nonetheless be sufficiently familiar with the laws of this state, and their duties thereunder, so as to instill confidence in our justice system.
Our review of the record establishes that Justice of the Peace Cook failed to attend any justice of the peace training sessions offered by the Office of the Attorney General since 1995, when attendance became mandatory and the Office of the Attorney General began keeping records of attendance by justices of the peace. The record also establishes that Justice of the Peace Cook failed to attend the special "make-up" session in August 2004, even though he was served on two occasions with notice of the special session. Ms. Noto testified as to the specific procedures she uses to certify that a justice of the peace has attended the training session and how each justice is given a certificate upon completion of the course. Ms. Noto explained that she sends a letter each year to the payroll office in the Department of Public Safety listing the justices of the peace who have not attended a training session within the prior two years. She also explained that she sends a letter to the justice of the peace who has not attended a session within the previous two years which informs the justice what her records show and to respond if those records are in error. Ms. Noto did so inform Justice of the Peace Cook in April 2003, but she received no response from him. Ms. Noto also stated that she had no record of Justice of the Peace Cook ever attending a training session. Thus, we find no manifest error in the Commission's factual findings that Justice of the Peace Cook has not attended the mandatory Justice of the Peace Training Course after 1995, when attendance became mandatory, and that he did not attend the special "make-up" course offered in August 2004.[5]
We further find that Justice of the Peace Cook's failure to comply with the mandatory training requirements of La.Rev.Stat. 49:251.1 and La.Rev.Stat. 13:2589 violates the Code of Judicial Conduct. Canon 1 provides in part that "[a] *426 judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved." A justice of the peace who fails to attend mandatory justice of the peace training courses, in which justices of the peace are trained in the laws of this state and their duties thereunder, certainly cannot be said to be participating in establishing, maintaining, and enforcing, or personally observing, high standards of conduct. Additionally, such failure to comply with the law of this state violates Canon 2(A), which provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." In sum, Justice of the Peace Cook's complete failure to comply with the mandatory training requirements has resulted in a violation of the Code of Judicial Conduct.

SANCTION
Having found that Justice of the Peace Cook has violated Canons 1 and 2(A) of the Code of Judicial Conduct, we turn to the question of an appropriate sanction for such misconduct. The Commission recommended that respondent be removed from judicial office and ordered to pay costs. The Office of the Special Counsel agrees with that recommendation.
The following non-exclusive list of factors has been adopted by this Court when considering the imposition of discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In re: Chaisson, 549 So.2d 259, 266 (La. 1989) (quoting Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987)).
Pertinent to some of these factors, we note that Justice of the Peace Cook did not formally respond to any of the requests by the Judiciary Commission, the Office of Special Counsel, or the Attorney General, nor did he appear before either the Judiciary Commission or this court. The only explanations in the record for Justice of the Peace Cook's failure to appear before the Commission came from the testimony of Ms. Noto and the statement of Special Counsel Steven Scheckman before the Commission. Ms. Noto stated that Justice of the Peace Cook contacted her in January or February of 2005. At that time, Justice of the Peace Cook inquired as to whether he had to attend the hearing before the Commission and stated that he had been very ill. Ms. Noto stated that she referred him to the Office of Special Counsel. In response to other questioning, Ms. Noto stated that, with regard to the annual training sessions, she would accept a doctor's excuse from a justice of the peace who failed to attend and would place the excuse in the file; however, she noted that she encouraged justices of the peace to attend courses annually, though the course is mandated only bi-annually, in the event the justice is unable to attend *427 any particular year. With regard to Ms. Noto's testimony, the Commission discounted any allusion to health reasons for Justice of the Peace Cook's failure to attend any training sessions, including the special "make-up" session, noting that there was no documentation regarding a health problem and that Justice of the Peace Cook had never attended a training session within a ten-year period.
Mr. Scheckman, at the request of the Commission, related his conversation with Justice of the Peace Cook regarding his attendance at the hearing before the Commission. According to Mr. Scheckman, Justice of the Peace Cook, who, the record shows, was served with a subpoena on December 27, 2004, to appear before the Commission, called Mr. Scheckman and stated that it was very difficult for him to attend the training sessions, including the August 2004 session, because he runs a small business, a car lot, and he is a mechanic. Justice of the Peace Cook inquired of Mr. Scheckman whether resigning from office and running again for the same office would get him out of his current dilemma, but Mr. Scheckman responded that he did not think that plan would work. Justice of the Peace Cook further stated that he does not get supplemental pay from the state because he did not attend justice of the peace school and that he is instead paid by the parish. Justice of the Peace Cook indicated to Mr. Scheckman that he might resign from office, but was not sure. He also informed Mr. Scheckman that he would not be attending the hearing, because he could not afford to attend or to travel. When Justice of the Peace Cook asked what would happen as a result of the hearing, Mr. Scheckman informed him that he did not know, it was not his decision to make. But he alerted Justice of the Peace Cook to the fact that there was an outstanding subpoena and that the justice could be placing himself in contempt if he failed to attend the hearing.
Examining the Chaisson factors with this additional information, we first find that respondent's failure to attend any justice of the peace training course after attendance became mandatory in 1995, as well as the special "make-up" course offered in August 2004, cannot be deemed an isolated event, but constitutes a pattern of misconduct, which was further evidenced when he refused to obey the subpoena issued by the Judiciary Commission. Next, respondent failed to comply with the training requirement on an annual basis, as courses were offered, and the nature and extent of that misconduct became more serious when respondent declined to attend the special session, of which he was notified on more than one occasion. Although the misconduct did not occur in the justice of the peace court or within respondent's private life, it certainly occurred in respondent's official capacity as Justice of the Peace for District 1. Given the testimony of Ms. Noto and Mr. Scheckman, it does appear that respondent is at least aware of his misconduct, even if he apparently does not recognize the seriousness of that misconduct, because there is certainly no evidence in this record that respondent has made any effort whatsoever to change his conduct. Indeed, respondent's statement to Mr. Scheckman about resigning and then running again for office suggests that respondent would attempt to avoid any responsibility for his misconduct if he could.[6] Justice of the Peace Cook has *428 served since 1994, and has had no prior complaints against him. Additionally, there is no evidence that he has exploited his position to satisfy personal desires.
Nevertheless, we find that the effect respondent's misconduct has had, or likely could have, upon the integrity of and respect for the judiciary is great. Our citizens who come before justices of the peace in this state expect and deserve a justice of the peace who is reasonably versed in the laws he or she will apply in deciding the matters before the justice of the peace court  matters that may in some instances be very minor in total dollar amounts, but which may very likely be critical to the parties. As set forth earlier, a justice of the peace is not required to be an attorney admitted to the practice of law; however, our law recognizes that justices of the peace, should be, at the very least, trained in the law as it pertains to their judicial authority, both civil and criminal. La.Rev.Stat. 49:251.1 and La.Rev. Stat. 13:2589 serve to further that objective. Yet, Justice of the Peace Cook's refusal to comply with these statutes amounts to willful misconduct relating to his official duty, willful and persistent failure to perform his duty, and persistent, public conduct prejudicial to the administration of justice that brings his judicial office into disrepute.

CONCLUSION
Upon review of the record, we conclude the most severe discipline is warranted in this case. The record does not convince this court that Justice of the Peace Cook's repeated and continuing failure to comply with the mandatory training requirements of La.Rev.Stat. 49:251.1 and La.Rev.Stat. 13:2589 will be remedied. Thus, Justice of the Peace Cook's conduct constitutes a willful and persistent failure to perform his duty, willful misconduct relating to his official duty, and persistent, public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Accordingly, it is ordered, adjudged, and decreed that the respondent, Justice of the Peace Wade Cook, District 1, Parish of Sabine, State of Louisiana, be, and is hereby, removed from office, and that his office be, and is hereby, declared to be vacant. Furthermore, pursuant to La. Sup.Ct. Rule XXIII, § 22, we cast the respondent with $129.50 for the costs incurred in the investigation and prosecution of his case.
REMOVAL FROM JUDICIAL OFFICE ORDERED.
NOTES
[1] As amended in 1995, La.Rev.Stat. 49:251.1, entitled "Justice of the peace training course," provides in pertinent part:

A. The attorney general of the state of Louisiana, within six months from the date justices of the peace and constables take office and once a year thereafter, shall conduct courses of training and education for persons elected to full terms to the offices of justice of the peace and constable. Such courses of training shall be known as the Justice of the Peace Training Course, which may be conducted in various sections of the state at places designated by the attorney general.
B. Newly elected justices of the peace and constables must attend the first training course available after they take office. Every justice of the peace and constable shall attend at least one of the training courses every other year, and a justice of the peace or constable who fails to do so shall not earn or receive state supplemental pay for his office until he attends a course and receives a certificate of completion from the attorney general.
* * *
G. At the conclusion of the Justice of the Peace Training Course, the attorney general shall present to each justice of the peace and constable who has attended the full course a certificate of completion prepared by him and bearing his signature.
As amended in 2001, La.Rev.Stat. 13:2589, entitled "Compensation of justices of the peace and constables in criminal matters," provides in pertinent part:
A. (1) Justices of the peace and constables shall receive no fees in criminal matters or in peace bond cases, but in lieu thereof they shall receive such salaries as are fixed by the parish governing authority and paid by the parish, which salaries shall be graded, but which in no case shall be less than seventy-five dollars per month. This salary of not less than seventy-five dollars per month shall include and shall not be in addition to the amount of the salary provided for in R.S. 33:1702.
(2) Every justice of the peace and constable shall attend at least one of the Justice of the Peace Training Courses offered by the attorney general pursuant to R.S. 49:251.1 every other year, and a justice of the peace or constable who fails to do so shall not earn or receive the compensation provided in this Section, until he attends a course and receives a certificate of constable, deputy constable, or special deputy constable for handling those litter violations.
La.Rev.Stat. 33:1702, entitled "Salary for constables and justices of the peace," provides as follows:
The police jury in all parishes having a population of over five thousand shall fix the pay of constables and justices of the peace and said salary shall be not less than thirty dollars per month.
[2] Canon 1, entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary," provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2, entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," provides in subsection A:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3, entitled "A Judge Shall Perform the Duties of Office Impartially and Diligently," provides in pertinent part:
The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.
(2) A judge shall maintain order and decorum in judicial proceedings.
[3] The Judiciary Commission made no finding with regard to Canons 3A(1) and 3A(2).
[4] La.Code Civ. Proc. arts. 4911 et seq. set forth the civil jurisdiction of a Justice of the Peace Court, which is a trial court of limited jurisdiction. La.Code. Civ. Proc. art. 4832, et seq. A Justice of the Peace Court also has limited criminal jurisdiction. For example, a justice of the peace has the authority to issue a peace bond, a summons, or a warrant of arrest; to bail or discharge in non-capital cases; and to issue search warrants where authorized by law. See In re: McInnis, 00-1026, p. 2 n. 3, 769 So.2d at 1188 n. 3. A justice of the peace may also punish a person adjudged guilty of direct contempt of court with fines and jail time. La.Code Civ. Proc. art. 4914; La.Code Crim. Proc. art. 25(D). For a general overview of the authority of a justice of the peace, see Richard P. Ieyoub, et al., Louisiana Justice Court Handbook (La. Dept. of Justice 2003), and Seth Hopkins, Local Justice: What Every Lawyer Should Know about Louisiana's Justices of the Peace, 52 La. Bar J., 16, 100 (2004).
[5] The Formal Charge and the Commission's report variously state that Justice of the Peace Cook failed to attend any training courses since the date of his election in 1994, since the Attorney General began keeping records, or for a period of ten years. As discussed previously, however, attendance was not made mandatory until 1995, and Ms. Noto's testimony indicates that the records of attendance were commenced at the time the statute became effective, i.e., in 1995. Thus, the record does establish that Justice of the Peace Cook failed to attend a training course since attendance was made mandatory in 1995. Whether he attended any training courses prior to that date is not revealed in the record.
[6] In the companion case today, In re: Chaffin, 05-0783, the respondent there also failed to attend mandatory training courses as required by La.Rev.Stat. 49:251.1 and La.Rev. Stat. 13:2589. However, Justice of the Peace Chaffin appeared before the Judiciary Commission and testified that he had attended some, if not all, of the required courses. He, too, failed to attend the special make-up session, but before he appeared in this court, Justice of the Peace Chaffin had attended the 2005 training course. Clearly, Justice of the Peace Chaffin recognized the seriousness of his misconduct and had taken steps to change or modify that conduct. Additionally, his cooperation with the Commission and his appearance before this court went a long way in convincing this court that he had rehabilitated himself and that his misconduct would not re-occur. Consequently, the sanction meted out in that case is not as severe as imposed here.