TRAYLOR, Justice.
I ]This judicial discipline matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (hereinafter “Commission”), a constitutional body charged with initiating disciplinary action against a judge, that Veronica Franklin, Justice of the Peace for Ward 2, *593 Parish of St. Helena, be removed from office and ordered to reimburse the Commission the costs incurred in the investigation and prosecution of the case.
After conducting an investigation, the Commission filed a formal charge against Justice of the Peace Franklin, finding that she violated Article 5, § 25(C) of the 1974 Louisiana Constitution and Canons 1, 2, 3A(1) and 3A(7) of the Code of Judicial Conduct: (1) by failing to schedule and conduct hearings in two matters filed in her court; (2) by issuing judgments in both matters despite never having conducted a hearing; (3) by failing to notify, provide for, or arrange service of process of the suits filed with regard to the defendants in these matters; (4) by failing to notify, provide for,- or arrange service of process of the judgments rendered with regard to either party in these two matters; and (5) by failing to communicate with the plaintiff regarding.both of these suits.
After a thorough review of the facts and law in this matter, and considering Justice of the Peace Franklin’s failure to cooperate with the Commission’s investigation, we find clear and convincing evidence sufficient to support the charge | gfiled against Justice of the Peace Franklin. We agree with the Commission’s recommendation that Justice of the Peace Franklin be removed from office and ordered to reimburse and pay to the Commission the amount of $352.16 in costs.
FACTS AND PROCEDURAL HISTORY BEFORE THE COMMISSION[1]
Justice of the Peace Franklin was elected to the judicial bench on October 23, 2002 and assumed the office of Justice of the Peace for Ward 2 in St. Helena Parish on January 1, 2003. She has served continually since that time. This disciplinary action was initiated against the respondent upon receipt by the Commission of a complaint filed in January 2005 by Mr. Chad Wild, the manager of Advantage Financial Services (“Advantage”), a consumer loan company. Mr. Wild filed the complaint against respondent on behalf of the company.
The complaint alleged that, despite Advantage’s filing of two separate suits in respondent’s court against two of its borrowers in October 2004, “Advantage Financial Services v. Davis” and “Advantage Financial Services v. Cain,” Justice of the Peace Franklin failed to set hearings or issue judgments in either action. The complaint additionally alleged that Mr. Wild was consistently unable to contact .respondent in reference to the matters in her court.
On January 27, 2005, the Office of Special Counsel to the Commission (“OSC”) forwarded Mr. Wild’s complaint to respondent. for a response. Justice of the Peace Franklin failed to respond to this initial inquiry into the complaint. Thereafter, OSC sent a second letter extending the deadline for responding. Justice of the Peace Franklin’s response to that request was one day late. In a letter received by OSC on March 2, 2005 but dated March 1, 2005, respondent answered the complaint and denied any misconduct with the following:
I Veronica Scott Franklin didn’t refuse to do anything. Here is a copy of my constable return section, that the paper was served.
I also received a telephone phone call that was left on my answer service from Chad E. Wallace [sic] from Advantage *594 Financial Service [sic] the cases of Patricia Davis and Chelis Cain.
He also made another telephone call telling me to wait, because I have other jobs which make me very busy.
Attached to respondent’s correspondence were copies of the constable’s returns in the Cain and Davis cases.
By letter dated November 8, 2005, the Commission informed respondent of the investigation which had been authorized into this complaint. On November 21, 2005, OSC sent a certified letter to Justice of the Peace Franklin, requesting she provide to them complete and certified records for the Davis and Cain matters. The letter was returned to OSC, undelivered after three attempts. As Justice of the Peace Franklin failed to respond to the informal request, OSC sought a subpoena duces tecum for the records, which was duly issued on January 6, 2006 and served upon respondent on January 18, 2006.
In her response to the subpoena, which was two days beyond the deadline, respondent provided the OSC with two service returns, two judgments, and one check stub showing Advantage had paid her a total of $160- in filing fees for the Davis and Cain cases. There was no certification as to the authenticity or completeness of the documents provided.
Notably, however, the constable’s service returns provided by respondent in response to the subpoena duces tecum were not the same as those which respondent |4had provided with her initial response to the complaint. In addition, the ease records respondent supplied also contained judgments dated November 19, 2004 against both defendants in favor of Advantage. The judgments reflected that trials had been conducted and that both parties had appeared in court at the hour fixed for trial; in fact, however, as will be discussed in more detail below, no trial had been conducted in either case.
As part of its investigation, OSC, subpoenaed Justice of the Peace Franklin to give a sworn statement on August 15, 2006 at 11:00 a.m. Respondent did not appear until 12:10 p.m., and the proceeding did not begin until approximately 12:43 p.m., since the court reporter had to be recalled. Respondent failed to bring with her to the deposition the complete records pertaining to the Davis and Cain matters.
In her sworn statement, Justice of the Peace Franklin stated that the Davis and Cain matters may have been the first cases she handled where the parties themselves did not contact her and she was expected to contact them. When asked about the discrepancies between the service returns, respondent testified that there was “something else in between this,” and stating she may have further documents in her file. Although she promised to send the complete files to the Commission, she has never produced the documents.
With regard to the Davis matter, respondent testified that Ms. Davis was served with a copy of the petition but that Ms. Davis was not served with anything thereafter because Ms. Davis left her employment which was within the geographical boundaries of the respondent’s ward. Respondent then contradicted herself and testified that Ms. Davis obtained a copy of the judgment, although she had no service return with her to substantiate the claim. The service return which respondent sent to the Commission, and which purported to show service of the judgment, was dated Isprior to the date of the judgment. When questioned about this, respondent explained that the service return she sent must have been for the petition and that the service return for the judgment must *595 be either in her file or she had not obtained it yet from her constable.
When asked during her sworn statement whether a copy of the judgment in the Davis case was ever served on Advantage, respondent replied that her constable would not serve Advantage because its office was located outside of the ward. She testified that she called the Advantage office, but Mr. Wild was not there. Respondent claimed she later spoke with Mr. Wild but that he asked her to wait to render judgment. She told Mr. Wild at that time that she did not work solely on his case. When respondent told Mr. Wild he could pick up the judgment, she claimed he did not know where she lived. She made no further attempts to have the judgment served on Advantage.
With regard to the Cain matter, Justice of the Peace Franklin stated that Mr. Cain was served with the petition by domiciliary service. She claimed he was also served with a copy of the judgment, but that he was not at home and was not to be found in the parish. When OSC counsel pointed out that the service return for the judgment indicated personal service on Mr. Cain almost a month before the judgment was rendered, respondent had no explanation other than to say that her constable could not find the man and complained that the parties had not come to court.
When asked if the service returns were drafted by her constable only after she received the letter of inquiry and the complaints from the OSC, respondent answered, “I can’t recall.” In trying to explain the discrepancies, respondent insisted that there had. to be “something else in between this” that she had not sent to the Commission Rand she stated that she would find the documents to which she was referring and would send them to the Commission after the sworn statement.
Respondent claimed that she continually maintained two telephone numbers since being elected to the position of Justice of the Peace and denied that they had ever been out of order. However, OSC presented an affidavit by one of its staff that both numbers had recordings of being disconnected as of May 3, 2007 when OSC attempted to contact her. No other numbers were listed in directory assistance for respondent at that time.
On several occasions during-her sworn statement, Justice of the Peace Franklin testified that processing the lawsuits filed by Advantage, or even notifying a plaintiff of a judgment rendered in his favor, was not worth the money she earned as a justice of the peace. She also indicated she thought she was doing what she was supposed to be doing, but indicated she was not aware of what she was., supposed to do. Respondent stated multiple times that if she had made a mistake, she-would fix it. .

Formal Charge

On December 5, 2006, the' Commission filed Formal Charge 0281 against respondent, alleging she violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2A (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 3A(1) (a judge shall be faithful to the law and maintain professional competence in it), and 3A(7) (a judge shall dispose of all judicial matters promptly, efficiently, and fairly) of the Code of Judicial Conduct. The Commission further alleged that respondent engaged in willful misconduct relating to her official duty, engaged in willful and persistent failure to perform her duty, and engaged in 17persistent and public conduct prejudicial to the, administration of justice that brings the judicial office into disre *596 pute, all in violation of La. Const, art. 5, § 25(C).
A certified letter dated December 7, 2006, informing Justice of the Peace Franklin of the Formal Charge, was sent to her but was returned unclaimed on January 5, 2007. Justice of the Peace Franklin was successfully notified of the Formal Charge by certified letter on January 18, 2007.
Due to the insufficient nature of the respondent’s response to the first subpoena duces tecum, the respondent’s failure to produce the records of the two cases during her sworn statement and her subsequent failure to forward the records to OSC as promised during her.sworn statement, the OSC issued a second subpoena to respondent on January 10, 2007, again requesting complete certified records for the Davis and Cain matters. The second subpoena was served on respondent on January 18, 2007.[2] Justice of the Peace Franklin never responded to the second subpoena duces tecum requesting the complete records for the Davis and Cain matters.
On January 24, 2007, via certified mail, Justice of the Peace Franklin was requested to respond to Interrogatories, a Request for Production of Documents, and Requests for Admission of Facts which had been previously propounded by OSC. Justice of the Peace Franklin never complied with that request.
Respondent’s participation in discovery after the Formal Charge was instituted was non-existent, despite her receipt of the notices and pleadings sent to her by certified mail. Because respondent failed to fully comply with discovery,, the Commission issued an order dated March 20, 2007, which limited respondent’s [ spresentation at the formal hearing which was held thereafter. In addition, the following material facts were deemed admitted:
1. Advantage Financial Services (hereinafter “Advantage”) filed suit in Justice of the Peace Franklin’s court against Ms. Patricia Davis on or about October 6, 2004 (hereinafter, “the Davis case”).
2. Advantage filed suit in Justice of the Peace Franklin’s court against Mr. Chelis Cain on or about October 7, 2004 (hereinafter, “the Cain case”).
3. Justice of the Peace Franklin collected a total fee of $160.00 from Advantage for filings in the Davis and Cain cases.
4. On or about March 2, 2005, Justice of the Peace Franklin faxed or otherwise sent to the OSC a copy of the “CONSTABLE’S RETURN SECTION” purporting to prove domiciliary service of the statement of claim and citation on Chelis Cain on October 23, 2004.
5. On or about January 26, 2006, Justice of the Peace Franklin faxed or otherwise sent to the OSC a copy of the “CONSTABLE’S RETURN SECTION” purporting to prove personal service of the statement of claim and citation on Chelis Cain in the Cain case on October 23, 2004.
6. The service information contained in the constable’s return sent to the Commission on March 2, 2005 and the constable’s return sent to the Commission on January 26, 2006 is not the same. The return sent March 2, 2005 shows domiciliary service *597 on Mr. Cain at a specified address and the return sent January 26, 2006 shows personal service on Mr. Cain “at his residence.” (Emphasis in original)
7. On or about March 2, 2005, Justice of the Peace Franklin faxed or otherwise sent to the OSC a copy of the “CONSTABLE’S RETURN SECTION” purporting to laprove personal service of the statement of claim and citation on Patricia Davis on October 19, 2004.
8. On or about January 26, 2006, Justice of the Peace Franklin faxed or otherwise sent to the OSC a copy of the “CONSTABLE’S RETURN SECTION” purporting to prove personal service of the statement of the claim and citation on Patricia Davis on October 23, 2004.
9. The service information contained in the constable’s return sent to the Commission on March 2, 2005 and the constable’s return sent to the Commission on January 26, 2006 is not the same. The return sent March 2, 2005 indicates Ms. Davis was personally served on October 19, 2004, while the return sent January 26, 2006 indicates personal service on Ms. Davis on October 23, 2004. (Emphasis in original.)
10. In the Davis case, Justice of the Peace Franklin never issued a citation to summon Patricia Davis to comply with Advantage’s demand against her.
11. In the Davis case, Justice of the Peace Franklin never forwarded to her constable or any other competent authority a citation to be served on Patricia Davis.
12. On the day and hour purportedly fixed for trial of the Davis case, there was no representative of Advantage present in Justice of the Peace Franklin’s courtroom.
13. On the day and hour purportedly fixed for trial of the Davis case, Patricia Davis was not present in Justice of the Peace Franklin’s courtroom.
14. In the Davis case, Justice of the Peace Franklin signed a “JUDGMENT.”
15. No notice of the judgment in the Davis case was served by constable or sheriff on Advantage.
16. No notice of the judgment in the Davis case was served by constable or sheriff on Patricia Davis.
|1017. In the Cain case, Justice of the Peace Franklin never issued a citation to summon Chelis Cain to comply with Advantage’s demand against him.
18. In the Cain case, Justice of the Peace Franklin never forwarded to her constable or any other competent authority a citation to be served on Chelis Cain.
19. On the day and hour purportedly fixed for trial of the Cain case, there was no representative of Advantage present in Justice of the Peace Franklin’s courtroom.
20. On the day and hour purportedly fixed for trial of the Cain case, Chelis Cain was not present in Justice of the Peace Franklin’s courtroom.
21. In the Cain case, Justice of the Peace Franklin signed a “JUDGMENT.”
22. No notice of the judgment in the Cain case was served by constable or sheriff on Advantage.
23. No notice of the judgment in the Cain case was served by constable or sheriff on Chelis Cain.

Commission Hearing

On May 19, 2007, the Commission convened a hearing in this matter. Although personally served with a hearing subpoena on April 13, 2007, Justice of the Peace Franklin did not appear.
The only witness to testify at the formal hearing was Mr. Tony Carpenter, who succeeded Mr. Chad Wild as the manager of Advantage. Mr. Carpenter testified that, *598 in October of 2004, he was the assistant manager at Advantage, a consumer finance company with sixteen offices in southeast Louisiana, and several offices in Mississippi. Part of his duties included preparing lawsuits for the manager, Mr. Wild at that time, to sign, and following up on the suits to make sure that the collections were made on outstanding loans. Mr. Carpenter personally prepared the statement l^of claim and citation for both the Davis and Cain matters, although Mr. Wild, the manager, signed them prior to filing with Justice of the Peace Franklin.
Mr. Carpenter waited about three weeks to a month, which was his normal practice, before calling the respondent to determine the status of the suits. He testified that he was rarely able to contact Justice of the Peace Franklin and left many messages for her to contact him. When he did talk to the respondent, she told him that a judgment had been issued and she was sending him the judgment via mail. Since he never received anything from respondent, Mr. Carpenter would again start trying to get in touch with respondent. Mr. Carpenter was of the impression that Justice of the Peace Franklin was trying to dodge the work required to resolve the suits. Mr. Carpenter later filled out the information on the complaint sent to the Commission, which Mr. Wild signed. Mr. Carpenter reiterated that Advantage never received anything from Justice of the Peace Franklin as far as a notice of trial or a judgment.
Mr. Carpenter testified he never attended a trial in either the Davis or Cain matter, nor was he aware of anyone from Advantage who did. He had never seen a judgment in either case, and was surprised to see for the first time at the hearing the two separate judgments which the respondent had sent to the Commission. According to Mr. Carpenter, the provisions of the judgment which stated that both parties had appeared in court for trial and that Advantage had proved its demand was false.
Mr. Carpenter informed the Commission that Mr. Cain never paid his debt to Advantage and the company wrote off the loss. The company did not re-file the claim in district court because the amount at issue was small and the costs of filing and attorney’s fees in that venue would have been prohibitive.
|12Mr. Carpenter had conversations with Ms. Davis after she started paying back her debt to the company. According to Mr. Carpenter, Mr. Wild had run into Ms. Davis by chance when he was collecting on another debtor. Mr. Wild had informed Ms. Davis of the suit filed against her and she began to make her payments voluntarily. However, Ms. Davis informed Mr. Carpenter that she never received anything from Justice of the Peace Franklin; respondent played no part in Ms. Davis meeting her financial obligation to Advantage.
Mr. Carpenter testified that Advantage would not file suit in respondent’s court if the company had another debtor in her jurisdiction. Mr. Carpenter believed that Justice of the Peace Franklin would not do anything about such a filing unless she felt she were in trouble. Mr. Carpenter stated that Advantage does limited business in St. Helena Parish because the company feels they have no recourse there, based on the respondent’s actions in these cases. The company normally utilizes the justice of the peace courts to collect outstanding debts from their clients and that this system normally works very well. Mr. Carpenter said that a client from the respondent’s jurisdiction would be looked at much more closely as far as terms and collateral because the company could not *599 be certain that it could collect on outstanding debts.
After the completion of Mr. Carpenter’s testimony, OSC counsel detailed the respondent’s history of non-compliance and non-cooperation "with the Commission and termed it “extraordinary.” OSC counsel expressed his belief that the evidence clearly and convincingly showed that there was no trial ever conducted in either the Cain or Davis matters. Based on the facts deemed admitted, the documentary evidence presented, the testimony of Mr. Carpenter and the failure of the respondent to cooperate with the investigation, the OSC recommended that Justice of the Peace |1sFranklin be suspended through the completion of her present term of office, which is through the end of December 2008.

Commission’s Recommendation

The Commission found clear and convincing evidence that respondent violated the Code of Judicial Conduct, specifically Canons 1, 2A, 3A(1) and 3A(7), and La. Const, art. 5, § 25(C), as charged in the Formal Charge. The Commission also found that respondent failed to respect and comply with the law and act at all times in a manner that promoted public confidence in the integrity and impartiality of the judiciary, failed to dispose of judicial matters promptly, efficiently and fairly, and failed to give her judicial duties precedence over all other activities in the matters of Advantage Financial Services v. Patricia Davis, No. 00015, and Advantage Financial Services v. Chelis Cain, No. 00016. However, the Commission disagreed with the recommendation of the OSC, and recommended to this court that Justice of the Peace Franklin’s conduct warranted removal from office.
LAW AND DISCUSSION
This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const, art. 5, § 25(C), which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
| uPursuant to its supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1,1976, which supplements the Constitution’s substantive grounds for disciplinary action against a judge. See In re: Justice of the Peace Cook, 2005-0783 p. 5 (La.6/29/05), 906 So.2d 420, 424. The Code is binding on all judges, including justices of the peace. Cook, 2005-0783 p. 5; In re: Justice of the Peace Landry, 2001-0657 p. 11 (La.6/29/01), 789 So.2d 1271, 1278. Violations of the Canons of the Code of Judicial Conduct, without more, may serve as the basis for the disciplinary action provided for by La. Const. *600 art. 5, § 25(C). Cook, 2005-0783 p. 5, 906 So.2d at 424.
In addition, a Justice of the Peace is governed by the same constitutions and laws that govern all courts and judges of this state, and is bound to apply the law as written by the legislature and construed by the various courts. In re: Justice of the Peace Alfonso, 2007-0120 p. 7 (La.5/22/07), 957 So.2d 121, 125; Cook, 2005-0783 p. 5, 906 So.2d at 424. That a justice of the peace is untrained in the law does not relieve a justice of the peace of the responsibility to follow the rule of law. Alfonso, 2007-0120 p. 7, 957 So.2d at 125; Cook, 2005-0783 p. 5, 906 So.2d at 424.
The charge against a judge must be proved by clear and convincing evidence before this court can impose discipline. In re: Hunter, 2002-1975 p. 4 (La.8/19/02), 823 So.2d 325, 328. Justice of the Peace Franklin was charged with violations of several Canons of the Code of Judicial Conduct. Canon 1 of the Code of Judicial Conduct provides:
A Judge Shall Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further 11fithat objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2A of the Code of Judicial Conduct provides:
A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
As used in this Code, “impartiality” or “impartial” denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge.
Canon 3A(1) and 3A(7) of the Code of Judicial Conduct provide:
A Judge Shall Perform the Duties of Office Impartially and Diligently
The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities
(1) A judge shall be faithful to the law and maintain professional competence in it. A judge shall be unswayed by partisan interests, public clamor, or fear of criticism.
* * *
(7) A judge shall dispose of all judicial matters promptly, efficiently and fairly.
Our review of the record shows that Justice of the Peace Franklin failed to properly comply with procedural rules integral to the performance of her duties as a justice of the peace. In justice of the peace courts, Louisiana law requires issuance of a citation, signed and sealed by the justice of the peace or the clerk of court, among other things. La.Code Civ. P. art. 4919.[3] The Commission found there was *601 no 11f;evidence that respondent issued citations in conformity with art. 4919, and testimony by Mr. Carpenter at the hearing convinced the Commission that respondent did not comply with this requirement.
In justice of the peace courts, Louisiana law requires service of citation. La.Code Civ. P. art. 4920.[4] The Commission found that respondent produced no credible evidence of service of citation on Ms. Davis or Mr. Cain. The Commission found the evidence respondent provided to the OSC, in the form of returns of service, was | contradictory. Additionally, Louisiana law requires notice of trial to be served by registered or certified mail or by the sheriff. La.Code Civ. P. art. 1313(C).[5] The *602 Commission found the testimony from Mr. Carpenter supported the fact that respondent did not cause a notice of trial to be served on Mr. Cain, Ms. Davis, or Advantage, in conformity with Article 1313(C). Thus, the Commission found there was clear and convincing evidence that citation was not served on the defendants.
Concerning justice of the peace courts, Louisiana law permits a plaintiff to obtain a final judgment only by producing relevant and competent evidence establishing a prima facie case. La.Code Civ. P. art. 4921(B).[6] The Commission found there was no credible evidence that respondent convened a hearing upon which she could render a legally binding judgment in either the Davis or the Cain matters. The few documents produced by respondent during the course of the OSC’s investigation did not support a prima facie case in favor of Advantage or against either Ms. Davis or Mr. Cain. The Commission found that the evidence and hearing testimony were clear and convincing that no court proceeding was ever convened by respondent.
Louisiana law requires notice of signing of a judgment in justice of the peace courts. La.Code Civ. P. art. 4922.[7] Re *603 spondent’s sworn statement and Mr. | ^Carpenter’s hearing testimony persuaded .the Commission that respondent did not provide notice of judgment to Mr. Cain, Ms. Davis, or Advantage.[8] The record fully supports the Commission’s conclusions that Justice of the Peace Franklin failed to properly comply with procedural rules integral to the performance of her duties as a justice of the peace, and we adopt the Commission’s conclusions as our own.
The Commission found that respondent’s egregious failures to act in conformity with Louisiana law amounted to unethical conduct. Moreover, the Commission found Justice of the Peace Franklin’s failure to follow procedural rules similar to the conduct of Justice of the Peace Landry discussed in In re: Landry, 2001-0657 (La.6/29/01), 789 So.2d 1271. In Landry, a justice of the peace granted a default judgment without having properly served the defendant with notice of the suit and without requiring the plaintiff to make a prima facie case.
In Landry, this court made the following observations, which are pertinent here:
The United States Constitution and Louisiana Constitution guarantee an individual the right to due process of law. La. Const, art. 1, § 2. The right to due process is one of the most basic and fundamental rights bestowed on our citizens by the Constitution. Procedural due process requires an opportunity to be heard, in addition to notice of the | ^pendency of an action against an individual. Under La. C.C.P. art. 1201, a judgment rendered against a defendant who has not been validly cited and served with the petition is absolutely null, even if there is actual notice of the suit. Without such citation and service of process, the court does not have jurisdiction over the person of the defendant. ... Further La. C.C.P. art.2002(2) provides that among those judgments which may be annulled are those rendered “against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken.” Landry, 2001-0657 p. 9, 789 So.2d at 1277-1278 [citations omitted].
As in Landry, respondent’s failure to provide proper service of citation, notice of trial, and notice of judgment deprived the parties of procedural due process. As a judicial officer, Justice of the Peace Franklin “is required to know, understand, and respect the fact that our system of government is. one of rules. [S]he is sworn to apply and abide by these rules.” Landry, 2001-0657 p. 10, 789 So.2d at 1278. We agree with the Commission’s conclusion that respondent’s failure to follow procedural rules amounted to unethical conduct. Moreover, the conduct exceeded mere judicial error; it rose to the level of judicial misconduct which is sanctionable. See In re: Quirk, 1997-1143 (La.12/12/97), 705 So.2d 172.
SANCTION
The sanction recommended by the Commission for Justice of the Peace Franklin is removal from her judicial of~ *604 fice. Before concluding that removal is the most appropriate recommendation, the Commission applied the test that this court has directed be used when removal from office is considered as an appropriate sanction. The Commission found applicable the following:
The most severe discipline should be reserved for judges who ... because of laziness or indifference fail to perform their judicial duties to the best of their ability; ...
In re: Whitaker, 463 So.2d 1291, 1303 (La.1985).
| ¾⅛ recommending removal as an appropriate sanction, the Commission noted that the court in Hunter, supra, determined that Judge Sharon Hunter failed to perform her administrative duties and supervise her staff, regardless of whether her failure resulted from • inexperience, negligence, pride, or ineptitude:
Especially in cases where incompetence is at issue, the proper focus in deciding “whether removal is the appropriate solution depends not only on the magnitude of the violation but also on the probability of the violation’s recurrence. If the violation is likely to recur, removal is appropriate.” Matter of Field, 281 Ore. 623, 635, 576 P.2d 348, 354 (1978); see also In re Baber, 847 S.W.2d 800, 803 (Mo.1993)(“[W]hen incompetency is alleged the court’s task is to determine whether the conduct at issue establishes that the respondent lacks the requisite ability, knowledge, judgment, or diligence to consistently and capably discharge the duties of office he or she holds.”). Applying this approach, we conclude that the consequences of Judge Hunter’s conduct, both past and future, are too grave, and the likelihood of recurring harm to the justice system and the public is too great, should she remain on the bench.
Hunter, 2002-1975 p. 16, 823 So.2d at 336. As in Hunter, the Commission found the respondent may have been too incompetent or too inexperienced to adequately perform her judicial duties. That being the case, the Commission believed that the consequences of respondent’s conduct are too grave and the likelihood of recurring harm is too great to permit her to remain on the bench.
Our review of the record shows that Justice of the Peace Franklin confessed during her sworn statement that she did not understand what she should have done with regard to service when the parties were outside of her ward, or what she should have done under’ the circumstance where the parties themselves did not voluntarily appear before her. The respondent seemed unaware of proper legal procedures. Rather than seek advice or help, however, Justice of the Peace Franklin chose to disregard her judicial obligations and failed to comply with procedural laws. The 122record supports the Commission’s conclusion that the respondent was either too incompetent or inexperienced to properly perform her judicial role.
Our inquiry into the appropriate sanction does not end with the respondent’s failure to follow procedural rules. The Commission additionally concluded the respondent did not stop at her failure to apply clear and determined law, but found that she aggravated her misconduct by falsifying documents based upon hearings that were never convened. This deceitfulness led the Commission to find that her continued presence on the judicial bench posed a much greater harm to the public than did that of Justice of the Peace Landry.[9]
*605 In several recent judicial discipline cases, the Commission noted that untruths or misrepresentations by the judge were a factor in the sanctions imposed by the court. See In re: Van Sharp, 2003-2256 (La.10/29/03), 856 So.2d 1213 (sixty-day suspension imposed upon a judge for failing to render decisions timely and for failing to report cases as under advisement to the Judicial Administrator, as well as for filing reports falsely stating that he had no cases under advisement); In re: Davis, 2003-2801 (La.2/4/04), 865 So.2d 693 (ninety-day suspension imposed upon a judge who falsely denied to the Commission that he heard any cases involving his father, the chief public defender for the Indigent Defender Board); In re: King, 2003-1412 (La.10/21/03), 857 So.2d 432 (judge removed from office for lying under oath during the Commission’s investigation of alleged campaign improprieties). The Commission found that in the instant case, respondent’s dishonesty was more akin to that displayed by former Judge King, thus warranting the most severe recommendation of discipline. The Commission concluded that a judge who fabricates judgments after [ ^failing to convene proceedings endangers the structure of the administration of justice. When this fact is uncovered, the integrity of the judiciary as a whole is damaged.
Further, and explicitly applicable to Justice of the Peace Franklin’s case, the Commission noted this court’s appraisal of former Judge King’s dishonesty before the Commission:
... even more reprehensible [than Judge King’s violation of the Code of Judicial Conduct], is his misconduct in lying to the Commission about these matters, both in his initial response letter and in his sworn statement. Not only did he lie to the Commission in his response letter of November 20, 2001, he lied in his sworn testimony to the OSC five months later....
... lying to the Commission in a sworn statement taken as part of an investigation is simply conduct which this Court cannot and will not tolerate.
King, 2003-1412 p. 24-25, 857 So.2d at 449.
In addition, the Commission noted this court’s statements, cited in King, from Stanley v. Jones, 201 La. 549, 9 So.2d 678, 683 (1942), wherein it removed a sitting district court judge for lying:
The office of judge is one in which the general public has a deep and vital interest, and, because that is true, the official conduct of judges, as well as their private conduct is closely observed. When a judge, either in his official capacity or as a private citizen, is guilty of such conduct as to cause others to question his character and morals, the people not only lose respect for him as a man but lose respect for the court over which he presides as well. Id.
Considering these cases, the Commission found that Justice of the Peace Franklin lied about convening two hearings and about the manner in which she conducted proceedings in the Davis and Cain cases. She claimed the parties had been served with notice of the citation. She further stated that service of the judgments was attempted on the defendants. She presented to the Commission two versions of [^service returns, which were inconsistent. The Commission found these *606 statements are untrue. Applying these teachings to the proven evidence, the Commission concluded that respondent so seriously disregarded her responsibilities as a judicial officer and responded in such a disingenuous manner to the Commission’s investigation that she has tainted the judiciary. The Commission concluded her conduct was so egregious that there is doubt about her integrity and her future decision making.
Notwithstanding its belief that removal was the necessary recommendation in this case, the Commission also looked to the factors set forth by this court for judicial discipline, other than removal, set forth in In re: Chaisson, 549 So.2d 259, 266 (La.1989). This non-exclusive list of factors includes the following considerations:
(a)whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (e) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been pri- or complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
The Commission came to the following conclusions with regard to the Chaisson factors:
(a) Respondent’s misconduct affected two individuals and a business in two separate incidents. The incidents are sufficiently serious to impose discipline.
(b) Respondent’s misconduct calls her basic honesty into question. In both the Davis and Cain matters, she issued judgments that indicated trials were held on the merits. This was false. Respondent fabricated supporting documents for each alleged trial, including conflicting service returns and judgments, in order to defend herself against the Formal Charge. Further, by not actually notifying the parties of their [^opportunity to be heard and conducting a trial, while issuing judgments anyway, respondent denied the parties their due process rights.
(c) and (d) Respondent’s misconduct occurred in her courtroom and in her official judicial capacity.
(e) and (f) Respondent did not admit any wrongdoing. Notably, though, during her sworn statement, respondent seemed unaware of required legal procedures. She told Special Counsel that she did not know she had done anything wrong, but she would correct her mistakes if she had made any. There is no evidence that she made any attempt to correct herself and she failed to attend the hearing where the Commissioners might have been able to address the possibility.
(g) Respondent assumed the judicial bench in January 2003, and the complaints against her were lodged in October 2004. Respondent was nearing the conclusion of her second year in office when her misconduct occurred. The Commission did not find her relative newness as a judicial officer to be a mitigating factor because basic law and its application were in question. Any judicial officer should have known when taking the bench that she had to legally cite, serve and convene a hearing prior to rendering a judgment.
*607 (h) There have been no prior complaints lodged against respondent.
(i) Insofar as the evidence presented is concerned, there appeared to have been little publicity surrounding respondent’s misconduct. However, her actions were so egregious that they potentially cast the judiciary as a whole in a negative light. According to hearing testimony, the complainant is reluctant to do business in St. Helena Parish due to respondent’s mishandling of the Cain and Davis cases.[10]
I RfiCi) There is no indication that respondent exploited her position to satisfy her personal interests. However, her dishonesty during the course of the Commission investigation evidences her desire to avoid any potential negative consequences of her actions.
Our review of the record shows that it is difficult to determine whether Justice of the Peace Franklin was intentionally misrepresenting the truth to the Commission or whether the respondent was hampered by her inability to understand the requirements of her judicial role and the serious consequences of her conduct. To be sure, the respondent gave conflicting and contradictory responses during her sworn statement.[11] Nevertheless, the record does show that statements made by the respondent were not supported by the documentary evidence she produced and that she failed to produce documents which she claimed would make her testimony clear. Our resolution of the issue of whether respondent was untruthful is hampered by her utter failure to cooperate with the Commission in the investigation of this matter. At every turn, Justice of the Peace Franklin failed to respond timely; failed to produce documents, whether informally requested or subpoenaed; failed to answer interrogatories and requests for admission; and failed to appear at the Commission hearing, where the conflicts or contradictions in her testimony or within the documents submitted could have been resolved through questioning. In addition, the respondent failed to file a brief in this court or appear for oral argument.
The complete indifference to these proceedings exhibited by Justice of the Peace Franklin, along with her demonstrated failure to follow procedural laws, or to understand her responsibilities as a justice of the peace, convince us that the proper sanction for her conduct is removal from her judicial office. In making the determination that the most severe sanction is necessary, we are guided by our prior precedents, which caution us:
Removal of a judge is a task we pursue cautiously, and only after painstaking evaluation and careful contemplation, remembering that the electorate can only be served by those who are faithful to the solemn oath of office, the constitution, and the Canons of the Code of Judicial Conduct.
In re: Hughes, 2003-3408 p. 61 (La.4/22/04), 874 So.2d 746, 788.
*608 Consideration of the Chaisson factors found by the Commission supports our determination that removal is the appropriate sanction in this judicial discipline matter. As found in Cook,
we find that the effect respondent’s misconduct has had, or likely could have, upon the integrity of and respect for the judiciary is great. Our citizens who come before justices of the peace in this state expect and deserve a justice of the peace who is reasonably versed in the laws he or she will apply in deciding the matters before the justice of the peace court — matters that may in some instances be very minor in total dollar amounts, but which may very likely be critical to the parties. As set forth earlier, a justice of the peace is not required to be an attorney admitted to the practice of law; however, our law recognizes that justices of the peace, should be, at the very least, trained in the law as it pertains to their judicial authority, both civil and criminal.
Id., 2005-0783 p. 12, 906 So.2d at 428.
CONCLUSION
Upon review of the record, we conclude the most severe discipline is warranted in this case. Based on Justice of the Peace Franklin’s failure to follow proper procedural rules, her contradictory and unsupported statements to the Commission, and her utter failure to cooperate with the Commission in the investigation of this matter, we do not believe her conduct will be remedied. Thus, Justice of the Peace Franklin’s conduct constitutes a willful and persistent failure to perform her duty, lajWillful misconduct relating to her official duty, and persistent, public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Accordingly, it is ordered, adjudged, and decreed that the respondent, Justice of the Peace Veronica Franklin, Ward 2, Parish of St. Helena, State of Louisiana, be, and is hereby, removed from office, and that her office be, and is hereby, declared to be vacant. Furthermore, the respondent is ordered pursuant to La. Sup.Ct. Rule 23, § 26[12] to refrain from qualifying as a candidate for judicial office for five years and until certified by this court as eligible to become a candidate for judicial office. Finally, pursuant to La. Sup.Ct. Rule 23, § 22,[13] we cast the respondent with *609 $352.16 for the costs incurred in the investigation and prosecution of this case.
REMOVAL FROM JUDICIAL OFFICE ORDERED.

. The following facts and procedural history were found by the Commission after a hear-mg held May 19, 2007, or are otherwise contamed in the record.

. In its findings of fact, the Commission errs in finding that the second subpoena duces tecum was served on the respondent on January 18, 2006. The record shows that this error may be typographical, however, as respondent was served with the first subpoena duces tecum on January 18, 2006, and with the second subpoena duces tecum on January 18, 2007.

. La. C.C.P. art. 4919 provides:
Art. 4919. Citation; justice of the peace courts; district courts with concurrent juris *601 diction
A. The citation must be signed by the justice of the peace or the clerk of court issuing it, with an expression of his official capacity and under the seal of his office, and must contain the following:
(1) The date of issuance.
(2) The title of the cause.
(3) The name of the person to whom it is addressed.
(4) The title and location of the court issuing it.
(5) A statement that the person cited must either comply with the demand contained of the plaintiff against him or make an appearance, either by filing a pleading or otherwise, in the court issuing the citation within the delay provided under Article 4920 under penalty of default.
B. When a written petition has been filed, a copy thereof shall be attached to the citation.
C. When the plaintiff has not filed a written petition, the citation shall:
(1) State the amount and nature of the claim and the year or years in which the indebtedness was contracted or arose and shall describe sufficiently to place the defendant on notice any promissory note or other written evidence of indebtedness on which the demand is based; and
(2) Describe the movable property and state the value thereof, if the suit is for the ownership or possession of movable property.

. La. C.C.P. art. 4920 provides:
Art. 4920. Delay for answering; justice of the peace courts; district courts with concurrent jurisdiction
The defendant shall answer within ten days of the service of citation, except that, when the citation is served through the secretary of state, the delay, as to all defendants, shall be fifteen days after service.
In addition, La. C.C.P. art. 1201(a) provides generally for citation in civil suits:
Art. 1201. Citation; waiver; delay for service
A.Citation and service thereof are essential in all civil actions except summary and executory proceedings, divorce actions under Civil Code Article 102, and proceedings under the Children's Code. Without them all proceedings are absolutely null.

. La. C.C.P. art. 1313 provides in pertinent part:
Art. 1313. Service by mail, delivery, or facsimile
A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
(1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.
(2) Delivering a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party.
(3) Delivering a copy thereof to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
(4) Facsimile transmission of a copy thereof to the counsel of record at his number designated for facsimile transmission, or if there is no counsel of record, to the adverse party at his number designated for facsimile transmission, this service being complete upon receipt of the transmission.
B. When service is made by mail, delivery, or facsimile transmission, the party or counsel making the service shall file in the record a certificate of the manner in which service was made.
C. Notwithstanding Paragraph A of this Article, if a pleading or order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314.

. La. C.C.P. art. 4921 provides:
Art. 4921. Judgment by default; justice of the peace courts; district courts with concurrent jurisdiction
A. If the defendant fails to answer timely, or if he fails to appear at the trial, and the plaintiff proves his case, a final judgment in favor of plaintiff may be rendered. No prior default is necessary.
B. The plaintiff may obtain a final judgment only by producing relevant and competent evidence which establishes a prima facie case. When the suit is for a sum due on an open account, promissory note, negotiable instrument, or other conventional obligation, prima facie proof may be submitted by affidavit. When the demand is based upon a promissory note or other negotiable instrument, no proof of any signature thereon shall be required.

. La. C.C.P. art. 4922 provides:
Art. 4922. Notice of judgment; justice of the peace courts; district courts with concurrent jurisdiction
Notice of the signing of any final judgment shall be given as required by Article 1913.
La. C.C.P. art. 1913 provides:
Art.1913. Notice of judgment
A. Except as otherwise provided by law, notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel.
B. Notice of the signing of a default judgment against a defendant on whom citation was not served personally, or on whom citation was served through the secretary of state, and who filed no exceptions or answer, shall be served on the defendant by the sheriff, by either personal or domiciliary service, or in the case of a defendant originally served through the secretary of state, by service on the secretary of state.
C. Notice of the signing of a default judgment against a defendant on whom citation was served personally, and who filed no exceptions or answer, shall be mailed by the clerk of court to the defendant at the address where personal service was obtained or to the last known address of the defendant.
D. The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.
E. (1) On a contested motion, exception, or rule to show cause, when all parties or their counsel are present in court and a final judgment is rendered and capable of being transcribed from the record of the proceeding, the requirement of mailing notice of the signing of the final judgment by the clerk may be waived by either reciting in open court a statement by all parties or their counsel to that effect which statement shall be capable of being transcribed from the record, or by filing in the record a written statement to that effect, signed by all the parties or their counsel.
(2) Waiver of the notice of signing of the judgment pursuant to this Paragraph shall satisfy the requirement of mailing of the notice of the signing of the judgment by the clerk and shall commence the running of all subsequent delays to take further action; however, the provisions of this Paragraph *603 shall not apply to the running of prescription pursuant to Civil Code Article 3501.

. In a sworn statement, respondent complained that she is paid only $42.50 "for the ripping and running that we have to do” in serving the parties with notice of judgment:
Q. ... It wasn't worth the $42.50 ... to have the plaintiff notified of the judgment rendered in his favor?
A. Right.

. Justice of the Peace Landry was suspended without pay for six months, placed on a two *605 year probationary period, and assessed all costs of the judicial discipline proceedings for one instance of rendering a default judgment against a defendant in a small claims matter without having served the defendant with notice of the suit and without requiring relevant and competent evidence of the plaintiff to make a prima facie case. Landry, 2001-0657 p. 14, 789 So.2d at 1280.

. The Advantage representative testified that his company has decided to provide only limited services to the residents of St. Helena Parish, and that if his company does loan money in St. Helena Parish, more onerous conditions are imposed upon potential borrowers.

. In addition to the conflicting or contradictory statements already found by the Commission, we also note that respondent told the Commission on March 2, 2005 that Advantage had asked her to wait to render judgment, and then on January 26, 2006 produced to the Commission judgments dated November 19, 2004. She also told the OSC during her sworn statement that she was in possession of files which contained other documents, promised to send the files to the Commission, and failed to do so.

. La. Sup.Ct. Rule 23, § 26 provides as follows:
Section 26. Any former judge who has been removed from office by the Supreme Court pursuant to La. Const. Art. V, § 25C is not eligible to become a candidate for judicial office until certified by this court. After five years from the date of removal, a former judge may file a petition for reinstatement of eligibility to seek judicial office with the judiciary commission. The commission shall promptly review the petition and may hold a hearing and take evidence if necessary. Within thirty days of the filing of the petition, the commission shall file a written recommendation with this court as to whether the former judge's eligibility to seek judicial office should be reinstated. The court shall review the recommendation of the commission and issue an order granting or denying the former judge certification of eligibility to seek judicial office.

. La. Sup.Ct. Rule 23, § 22 provides as follows:
Section 22. The office of special counsel shall file an itemized cost statement with the judiciary commission in any case in which the commission convenes a hearing. In cases where the commission recommends the discipline of a judge, the commission shall review counsel’s cost statement and shall recommend to the court that all or any portion of the costs incurred in the office of special counsel, as well as costs the commission has incurred, be taxed against the judge. The commission’s recommendation shall be included in the record filed in this court in the form of an itemized cost statement. The court, in its discretion, may tax all or any *609 portion of the costs recommended by the commission.