GUIDRY, Justice.*
hThis matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (hereinafter, “Commission”), pursuant to La. Const, art. V, Sect. 25(C), that Justice of the Peace Roger Adams of Ward 7, Parish of Avoyelles, State of Louisiana, be suspended without pay for 180 days, followed by a probation of two years, required to attend the Attorney General’s justice of the peace training every year until his term of probation is completed, and ordered to reimburse and pay to the Commission the sum of $532.58 in costs. For the reasons set forth below, we find Justice of the Peace Adams violated Canons 1, 2(A), and 3(A)(1) of the Code of Judicial Conduct, as well as Art. V, Sect. 25(C) of the Louisiana Constitution. Accordingly, we find he should be suspended without pay for one year, followed by a probation period of two years. Furthermore, we find Justice of the Peace Adams must attend the Attorney General’s training every year until the term of his probation is completed, and also reimburse and pay the Commission’s costs of $532.58.
FACTS and PROCEDURAL HISTORY
Justice of the Peace Adams (hereinafter, “Adams”), who is not a lawyer, assumed his judicial office over thirteen years ago, and he has served continuously since then, save for his 15-day suspension from office without pay imposed by this court in June 2007. In re: Adams, 07-0426 (La.6/29/07), 959 So.2d 474 | ^(hereinafter, “Adams /”). Adams was sanctioned at that time for having issued arrest warrants for two individuals for a parade permit violation and having set excessively high bonds, admittedly in retaliation for the individuals’ political opposition to the mayor of the Town of Simmesport.
Less than one year from imposition of his prior discipline, Adams in April 2008 visited a local jail to perform notarial duties. During his visit, an inmate at the jail, Jessica Evans, asked Adams to sign a judgment of divorce in the matter of Jessica Evans v. Adrian C. Evans. Despite having no authority or jurisdiction to do so as a justice of the peace, Adams signed the divorce judgment given to him by Ms. Evans. In return, Adams received a $10 “notary fee.” Contrary to law, the judgment bears no case number. Moreover, prior to signing the judgment Adams did not: (1) inquire, verify, or determine whether Ms. Evans was legally entitled to a divorce under La. Civ.Code art. 103, as recited; (2) verify service of what was clearly a default judgment or otherwise inquire or properly determine that Mr. Evans was actually in default; or (3) hold any hearings of any kind.
Ms. Evans ultimately sent a copy of the divorce judgment to the 22nd Judicial District Court for the Parish of St. Tammany as an attachment to a new petition for *950 divorce. The department head for the civil division for the clerk of court, recognizing that Adams did not have jurisdiction to sign such a judgment, filed a complaint about his actions with the Office of Special Counsel (hereinafter, “Special Counsel”). The Special Counsel forwarded the complaint, along with a copy of the signed judgment, to Adams. In a written response, Adams stated, “I had no knowledge that I did not have jurisdiction in divorce matters_ I regret any inconvenience that my signing ...” may have caused.
PROCEEDINGS BEFORE THE COMMISSION
After completing an investigation, the Commission on May 26, 2010, filed Formal Charge 300, alleging Adams engaged in judicial misconduct by signing a ^default judgment of divorce in the Evans matter, despite having no jurisdiction to do so as a justice of the peace, and without assigning a case number or following the legal requirements for rendering a default judgment. The Commission alleged that Adams’s conduct violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary), 2A (a judge shall respect and comply with the law), and 3(A)(1) (a judge shall be faithful to the law and maintain professional competence in it) of the Code of Judicial Conduct.[1] The Commission further alleged Adams engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. Const, art. V, Sect. 25(C).[2]

Joint Stipulations

Adams and the Special Counsel entered into a stipulation of facts in which Adams admitted all of the factual allegations contained in the Formal Charge. The Commission agreed to dispense with convening a hearing, and to accept the stipulated facts, subject to further questioning of Adams at a Commission meeting. | ¿Adams and the Special Counsel also entered into a stipulation of law in which Adams admitted that his actions were contrary to well-established Louisiana law and that his conduct violated Canons 1, 2(A), and 3(A)(1) of the Code of Judicial Conduct and Article V, Sect. 25(C) of the Louisiana Constitution as stated in the Formal Charge.[3] The Commission accept *951 ed the stipulations of law after Adams’s appearance before the Commission at its meeting on October 15, 2010.
During that meeting, Adams appeared before the Commission and admitted that he has a copy of, and uses, the Justice Court Manual prepared by the Louisiana Attorney General to assist justices of the peace in the performance of their duties.[4] He also admitted that the Justice Court Manual contains instructions regarding default judgments. However, when asked why he did not follow these instructions in the Evans case, Adams replied that he simply made a “hasty decision.”[5] Adams testified:
... At this particular time, I am aware what I’ve done. I made a mistake. At the same time, by not being, I guess, educated enough to know things that I should and should not do by following the laws of the state, it comes to a point sometimes when you don’t know what to do and don’t do anything. But here was an observation where I had no personal gain or anything because I only received a $10 fee trying to help someone and, perhaps, without me going into details of reading and seeing exactly what it was....
|aWhen a commissioner asked whether he understood the seriousness of his actions in the Evans case, Adams responded that he did not, as illustrated by the following exchange:
Q: ... [D]o you realize that a judgment of divorce has serious civil effects on the lives of many people, at least two, the husband and the wife, and if there are any children? Do you realize that? A: No, sir, not until after the fact, until I got to reading up on it after the fact. And I know in your mind you’re thinking, well, you should have read up on this before the fact.
Adams also testified:
Mistakes is (sic) going to be made. I did not realize the severity of the mistake that was made in this particular incident by signing this judgment of divorce for this particular inmate at the time. And after realizing what I did, all I could do is ... apologize for my actions that I did, for the mistake that had happened there.... I’m deeply sorry ... if I caused anybody any hardship, because it wasn’t done intentionally to do any harm to anybody or cause anyone any harm.

Conclusions of Fact and Law

The Commission concluded that, in signing the Evans divorce judgment, Adams acted in a manner contrary to well-established law, specifically La.Code Civ. Proc. art. 4918 (requiring that a case *952 number be assigned), La.Code Civ. Proc. art. 4921 (governing default in a justice of the peace court), and La.Code Civ. Proc. art. 4913 (governing matters over which justices of the peace have jurisdiction).[6] Therefore, the Commission found Adams violated the Code of Judicial Conduct and the Louisiana Constitution as charged. Furthermore, the Commission found Adams’s actions were contrary to clear and determined law about which there is no confusion or question as to its interpretation, and such action was either an egregious legal error or part of a pattern or practice of legal | fierror, or both, causing it to rise to the level of ethical misconduct. See In re: Quirk, 97-1143 (La.12/12/97), 705 So.2d 172.[7]

Recommendation of Discipline

The Commission recommended Adams be suspended without pay for 180 days, followed by a two-year period of probation. The Commission further recommended Adams be required to attend the Attorney Generals justice of the peace training every year until his term of probation is completed.[8] Finally, the Commission recommended Adams be ordered to reimburse and pay to the Commission the sum of $532.58 in hard costs.
DISCUSSION
In the instant case, Adams has stipulated to the facts and that his conduct violated Canons 1, 2(A) and 3(A)(1), as well Art. V, Sect. 25(C) of the Louisiana Constitution. Therefore, the sole issue presented to this court is the appropriate measure of discipline. In re: Broussard, 05-0475 (La.4/22/05), 900 So.2d 814. In deciding the appropriate sanction, we are mindful of the primary purpose of the Code of Judicial Conduct, which is to protect the public rather than simply to discipline judges. In re: Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019.
Adams’s violation of the rules of this court and the laws of this state has the potential to undermine the public’s confidence in the integrity of the judiciary. As we explained in In re: Wimbish, 98-2882, p. 5 (La.4/13/99), 733 So.2d 1183, 1187:
The Canons [of the Code of Judicial Conduct] were designed to promote a standard for judicial conduct that continuously reaffirms [7the integrity of the judiciary. Judges hold a unique position of administering justice.' They symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system. For this reason, it is important that judges comply with the laws and rules governing their conduct in a manner which promotes public confidence.
In determining the appropriate sanction for a judge or judicial officer who is subject to a disciplinary action, this court considers several non-exclusive factors set forth in In re: Chaisson, 549 So.2d 259 (La.1989).[9] We first find Adams has in *953 curred previous discipline for misconduct, when he was suspended without pay for fifteen days for exceeding his judicial authority in a criminal matter by setting excessively high bonds for two individuals to retaliate against them for political reasons. These now multiple infractions clearly establish a pattern of either disregard or ignorance of the laws of this state. Although Adams’s misconduct in the present case did not occur in court, it did occur in connection with his official capacity. Further, no evidence suggests Adams exploited his judicial position for personal gain.
Adams has acknowledged and apologized for his wrongful acts. We believe his remorse to be sincere. However, as we explained in In re: Wilkes, 403 So.2d 35, 44 (La.1981):
| S[A] Justice of the Peace [ ] is governed by the same constitutions and laws which govern all courts and judges of this state. He is bound to apply the law as written by the legislature and construed by the various courts. That he is a layman untrained in the law does not relieve him of his responsibility to follow the rule of law, nor does it empower him to unilaterally supersede substantive law and procedure, especially where ... there is not one scintilla of evidence indicative of a good faith attempt at compliance with the law.
Adams has promised he will change his conduct in the future by seeking legal advice from the Attorney General’s Office before signing any documents about which he has questions. However, of note in this case, Adams had no qualms about signing the divorce decree presented to him, because he mistakenly thought he possessed the authority to do so. He was not a new justice of the peace at the time of his ethical misconduct; consequently, he should have known and understood the limits of his jurisdictional authority. Adams was previously suspended, and at that time he assured this court his future conduct would conform to the expectations of the Code of Judicial Conduct and the laws of this state, but that did not happen. Thus, Adams’s actions placed the judiciary as a whole in a negative light because they evidenced his complete lack of familiarity with the constraints imposed by law on the exercise of his judicial authority, and with the most basic procedural requirements for rendering a default judgment. Although there was no evidence presented to the Commission as to whether anyone actually relied on the divorce judgment signed by Adams, his actions could have resulted in serious repercussions for the litigants had one of them attempted to remarry in reliance on it, and for anyone else who may have relied on the judgment without realizing it was invalid.
As the Commission recognized, two pri- or cases from this court shed light on an appropriate sanction for Adams’s misconduct. In those cases, like here, the justices of the peace failed egregiously to act in conformity with the laws pertaining to *954 the performance of their official duties and to afford the parties before |9them their right to due process under the law. See In re: Landry, 01-0657 (La.6/29/01), 789 So.2d 1271 (seasoned justice of the peace, who characterized his actions as unintentional mistakes, was suspended without pay for six months, followed by probation, for rendering a default judgment against a defendant without proper service of process and without convening a hearing); In re: Franklin, 07-1425 (La.11/27/07), 969 So.2d 591 (justice of the peace was removed from office for failing to conduct hearings, render judgments, and communicate with the plaintiff in two collection matters, and for fabricating judgments after the fact and failing to cooperate with the Commission). In light of Adams’s pri- or discipline, and his now unrealized assurances to this court in Adams I that he would in future abide by the law of this state, we find the misconduct in instant case, while it does not rise to the level necessitating removal as occurred in Franklin, does present a more serious pattern and history of misconduct than occurred in Landry.
Protection of the public and preservation of the integrity of the judicial system are paramount considerations. As the Commission properly recognized, whether Adams can ameliorate his competence in the future is a matter of grave doubt. In short, Adams signed a document of significant legal import in haste, without reading it carefully and without making any effort to determine the legal authority for, or the legal consequences of, his actions. Like the Commission, we are troubled by the fact that Adams, though an experienced justice of the peace and the subject of prior discipline for legal error, simply did not know he lacked jurisdiction in divorce matters, even though he had attended the mandatory justice of the peace training conducted by the Attorney General’s Office many times, and was familiar with the other resources offered by the Attorney General’s Office to assist justices of the peace. As the Commission noted, though Adams initially attributed his actions to a lack of education, he ultimately admitted that he had had |inample time to learn from his own experiences as a justice of the peace. As we have explained, a non-lawyer justice of the peace is bound by the Code of Judicial Conduct, and a lack of education is not a sufficient justification for not following the law. In re: Landry, 01-0657, p. 11, 789 So.2d at 1278. At a minimum, Adams, having over thirteen years of experience, should have known of the limits of his jurisdictional authority. Finally, of most concern is the fact that, when he signed the divorce judgment in April 2008, he had been disciplined by this court less than a year earlier for exceeding his authority by failing to follow the law in another matter.
Adams’s lack of familiarity with even the most basic rules pertaining to the exercise of his authority in a civil matter constitutes serious misconduct. As the Commission observed, it is equally as important to the public and to the integrity of the judicial system that a justice of the peace know and abide by the jurisdictional restrictions imposed by law upon the exercise of his official duties, as it is for him to follow the law in those areas in which he is authorized to act. The Commission was not overly confident that Adams could in the future conform his conduct to the rules of this court and the laws of this state. We share that concern. Accordingly, we accept the Commission’s recommendation that Adams be suspended from office without pay followed by a two-year period of probation; however, we believe a suspension of one year without pay, followed by two years of probation, would better protect the public and preserve the integrity *955 of the judicial system, as well as impress upon Adams that competence in the performance of his legal duties is vital in that regard.
DECREE
Upon review of the findings and recommendation of the Judiciary Commission, and considering the record filed herein, we conclude Justice of the Peace Roger Adams’s conduct violated Canons 1, 2(A), and 3(A)(1) of the Code of |n Judicial Conduct, subjecting him to discipline pursuant to Art. V, Sect. 25(C) of the Louisiana Constitution. Accordingly, it is ordered that Justice of the Peace Adams be suspended without pay for one year, followed by a two-year period of probation. It is further ordered that Justice of the Peace Adams attend the Attorney Generals justice of the peace training every year until his term of probation is completed, and reimburse and pay to the Commission the sum of $532.58 in hard costs.

 Retired Judge Robert Klees sitting ad hoc, for Justice Jeannette T. Knoll, recused.

.Those Canons provide in relevant part as follows:
Canon 1: An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2(A): A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3(A)(1):. A judge shall be faithful to the law and maintain professional competence in it.

. La. Const, art. V, Sect. 25(C) provides in relevant part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.

. Although Adams and the Special Counsel stipulated to the facts and legal conclusions, *951 they were unable to agree upon a recommended penalty. The Special Counsel recommended to the Commission that Adams be suspended from judicial office without pay for 180 days; Adams made no recommendation of his own. Adams has not filed any pleadings before this court in the present matter.

. Adams regularly attends the Louisiana Attorney General's training conference for justices of the peace, though he suggested before the Commission that the “education of the conference is just not in detail enough.” Adams indicated he understands that he may contact the Attorney General’s Office for legal advice and guidance regarding questions that come up in the course of his work as a justice of the peace. In the Evans case, however, Adams made no inquiry to the Attorney General’s Office because he did not "think that there was anything wrong” with signing the divorce judgment.

. When Adams was questioned by the Commission about his earlier ethical misconduct that gave rise to his suspension in Adams I, he indicated he had made a hasty decision in that instance also.

. La.Code Civ. Proc. art. 4913(B)(4) provides that a justice of the peace court "has no jurisdiction in ... [a] claim for annulment of marriage, separation from bed and board, divorce, separation of property, or alimony.”

. Adams stipulated in Adams I that he failed to follow the law regarding the setting of two bail bonds. As explained in Quirk, "... a pattern of repeated legal error (although not necessarily the same error) over a period of time can constitute judicial misconduct, regardless of whether the errors were made in bad faith or were egregious in nature.”

. Although Adams currently attends the training conference biannually, as required by law, the Commission believed it was important for him to receive additional training by attending the conference every year during his probation.

. In Chaisson, this court, citing Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors *953 a court may consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge’s official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.